IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITESMILE, INC. and BRITESMILE DEVELOPMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DISCUS DENTAL, INC.; SALIM NATHOO <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | No. C 02-03220 JSW <br><br> **ORDER GRANTING CAP ADVISORS LIMITED'S MOTION TO DISMISS DR. NATHOO'S SIXTEENTH COUNTERCLAIM** |

Now before the Court is the motion of Third Party Counter-Defendant CAP Advisors Limited ("CAP Advisors") to dismiss Dr. Salim Nathoo's sixteen counterclaim for lack of personal jurisdiction. Having carefully considered the parties' arguments and the relevant legal authority, the Court hereby GRANTS CAP Advisors' motion to dismiss. The Court finds the present motion appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Civil L.R. 7-1(b). Therefore, the hearing date of May 6, 2005 at 9:00 a.m. is HEREBY VACATED.

**BACKGROUND**

In this patent infringement action, Dr. Nathoo is asserting a counterclaim against CAP Advisors for breach of contract. CAP Advisors is moving to dismiss Dr. Nathoo's contract claim against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Dr. Nathoo contends that this Court may exercise jurisdiction over CAP Advisors on the basis of either general or specific jurisdiction, and that this Court may consider both CAP

Advisors' own contacts as well as the contacts of BriteSmile, Inc. ("BriteSmile") pursuant to the alter ego doctrine to establish jurisdiction over CAP Advisors. The Court will address the specific facts relevant to this motion as they are pertinent to the analysis.

**ANALYSIS**

**I.  Choice of Law.**

Dr. Nathoo contends that New York law governs his sixteenth counterclaim for breach of contract. Pursuant to this counterclaim, Dr. Nathoo alleges that he had an agreement with Pilaro and CAP Advisers to purchase $200,000 worth of BriteSmile stock. Dr. Nathoo gave Pilaro a $200,000 note for the stock, which was became due in June 2004. (Dr. Nathoo's Amended Countercomplaint, ¶ 169.) Although Dr. Nathoo paid the $200,000 before the note was due, Pilaro never conveyed the stock. (*Id*. at ¶¶ 170-71.) As a result, Dr. Nathoo is suing BriteSmile, CAP Advisors, and Pilaro for breach of contract based on their alleged failure to convey such stock. (*Id*. at ¶ 260.) To argue that New York law applies, Dr. Nathoo points to the choice of law provision in the agreement regarding the promissory note, which provides that the promissory note shall be construed and enforced in accordance with New York law. (Supplemental Declaration of Michael Yong, Ex. A, ¶ 11.) The choice of law provision does not address the alleged agreement to convey stock. Because Dr, Nathoo is not suing to enforce the note, the Court concludes that the choice of law provision is inapplicable. Accordingly, the Court will apply California law to Dr. Nathoo's claim for breach of contract.

**II.  Standards Applicable to Motions to Dismiss for Lack of Personal Jurisdiction.**

Pursuant to Rule 12(b)(2), a defendant may move to dismiss a complaint on the ground that the Court does not have jurisdiction over his, her or, in this case, its person. "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Company*, 374 F.3d 797, 800-801 (9th Cir. 2004). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Id*. at 801.

1   As the party bringing this action, Dr. Nathoo "bears the burden of demonstrating that
2 jurisdiction is appropriate." *Id*. at 800.  The parties have not requested and the Court has not
3 deemed it necessary to conduct an evidentiary hearing on the motion.  The Court is therefore
4 basing its decision on the written materials and declarations submitted by the parties, and thus,
5 the Court considers whether those materials make a prima facie showing of personal
6 jurisdiction.  *Id*. at 800.  In making that determination, the Court must accept those allegations
7 in Dr. Nathoo's Countercomplaint that are not controverted to be true.  *See id*.  Any conflicts
8 between the parties over statements contained in affidavits must be resolved in Dr. Nathoo's
9 favor.  *See id*.

**B.     Dr. Nathoo Has Not Made a Prima Facie Showing of General Jurisdiction.**

Dr. Nathoo claims that CAP Advisors is subject to general jurisdiction.  To demonstrate general jurisdiction is proper, Dr. Nathoo must show that CAP Advisors has "continuous and systematic" contacts with California.  Those contacts, however, need not be related to the specific cause of action asserted for breach of contract.  *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Bancroft & Masters, Inc. v. Augusta National Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000).

The standard for establishing general jurisdiction is fairly high and requires that the CAP Advisors' contacts be of the sort that approximate physical presence.  *See Bancroft & Masters*, 223 F.3d at 1086.  Factors the Court must take into consideration are "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  *Id*. (citing *Hirsch v. Blue Cross of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)).  Dr. Nathoo argues both that CAP Advisors' contacts with California are sufficiently "continuous and systematic" to support general jurisdiction, and that under the doctrine of alter ego, BriteSmile's contacts may be attributed to CAP Advisors for purposes of establishing jurisdiction.

**1.     CAP Advisors' Contacts with California**

CAP Advisors submits evidence demonstrating that it is not incorporated in California, does not have any offices in California or anywhere else in the United States, does not make

3

sales, solicit, or engage in business in California, does not have a designated agent for service of process in California, does not hold any license in California, does not have any employees that reside in California, and does not hold any bank accounts or real property in California. (Supplemental Declaration of Michael Yong ("Suppl. Yong Decl."), ¶¶ 2-5.) Except for the allegations regarding management and control of companies doing business in California which will be addressed in the context of determining whether the alter doctrine applies,[1] the only evidence Dr. Nathoo submits to contradict CAP Advisors' and to show "continuous and systematic" contacts in California relates to a lawsuit filed by CAP Advisors and loans it made.[2] In 1994, CAP Advisors was a plaintiff in a shareholder derivative suit against Visx filed in the Superior Court of California for the County of Santa Clara. (Declaration of David B. Moyer in support of Dr. Nathoo's opposition to CAP's Advisors' motion ("Moyer Decl."), Ex. J.) Filing an unrelated lawsuit over ten years ago is insufficient to establish general jurisdiction. *See Bhandari v. Mehta*, 2003 WL 22846224, *2 (N.D. Cal. Nov. 25, 2003) ("filing of one action in a particular forum does not constitute minimum contacts with the forum sufficient to establish general personal jurisdiction"). Next, Dr. Nathoo asserts that CAP Advisors provided loans to several of BriteSmile's officers and directors who "resided in or were otherwise connected with California." (Opp. at 3, 5.) Even if the evidence submitted by Dr. Nathoo did demonstrate that the individuals to whom CAP Advisors provided loans were California residents, engaging in

---

[1] In essence, Dr. Nathoo contends that through managing and controlling other companies, BriteSmile, Inc. and Visx, Inc., which transact business in California, CAP Advisors itself is "doing business" in the forum. For example, he argues that CAP Advisors managed BriteSmile's teeth whitening business in California. (Opp. to CAP Motion at 12.) Because Dr. Nathoo does not argue that CAP Advisors opened up its own offices or is conducting its own business in California, it is appropriate to evaluate CAP Advisors' conduct in allegedly managing and controlling BriteSmile and Visx in the context of determining whether the alter ego doctrine applies, and not as direct support for *CAP Advisors'* contacts in California.

[2] Dr. Nathoo also relies on credit agreements: (1) between CAP Advisors and BriteSmile International Limited, (2) between CAP America Trust and BriteSmile, and (3) between Excimer Vision Leasing L.P. and BriteSmile. However, Dr. Nathoo has not demonstrated any theory that applies under which the contacts of BriteSmile International Limited may be attributed to BriteSmile, or that the contacts of CAP America Trust and Excimer Vision Leasing L.P. may be attributed to CAP Advisors. Therefore, the Court has not considered these agreements in determining whether CAP Advisors has sufficient contacts in California for jurisdictional purposes.

4

limited transactions with a few California residents is not "the kind of activity that approximates physical presence within the state's borders." *Bancroft & Masters*, 223 F.3d at 1086 (holding that entering into license agreements with several television networks and vendors in California constituted doing business *with* California but not *in* California, and that engaging in commerce with state's residents did not approximate physical presence within the forum state). The Court therefore concludes that Dr. Nathoo has not demonstrated a prima facie showing of general jurisdiction based on CAP Advisors' contacts in California.

### 2. Alter Ego Doctrine

To show that BriteSmile is the alter ego of CAP Advisors, and thus that BriteSmile's contacts may be attributed to CAP Advisors for jurisdictional purposes, Dr. Nathoo asserts an assortment of transactions between a variety of individuals and companies, namely Anthony Pilaro, BriteSmile Development, Inc., BriteSmile International Limited, Ion Laser Technology, LCO Investments, Inc., ERSE Trust, CAP America Trust, and CAP America Limited, in addition to BriteSmile and CAP Advisors. Before the Court may consider such transactions, Dr. Nathoo would have to demonstrate it would be proper to ignore the distinctions between Mr. Pilaro and all these different companies. Even assuming *arguendo* that the Court could treat all the transactions asserted by Dr. Nathoo as though they were conducted between BriteSmile and CAP Advisors, Dr. Nathoo still fails to demonstrate that the alter ego doctrine applies.

"If a corporation is an alter ego of an individual or another corporation, then the district court may disregard the corporate form and exercise personal jurisdiction over the other individual or entity." *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 715 - 716 (C.D. Cal. 1996) (citations omitted); *see also Flynt Distributing Company, Inc. v. Harvey,* 734 F.2d 1389, 1393 (9th Cir. 1984) ("[W]here a corporation is the *alter ego* of the stockholders so as to justify disregard of the corporate entity[,] jurisdiction over the corporation will support jurisdiction over the stockholders.") (emphasis in original) (quoting *Sheard v. Superior Court,* 40 Cal.App.3d 207, 210 (1974)). "Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538

5

1  (2000). Under California law, a corporate identity may be disregarded "where an abuse of the
2  corporate privilege justifies holding the equitable ownership of a corporation liable for the
3  actions of the corporation.... Under the alter ego doctrine, then, when the corporate form is used
4  to penetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable
5  purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those
6  of the persons or organizations actually controlling the corporation...." *Id*. (citations omitted).
7  As explained by the court in *Sonora Diamond*, "[t]he alter ego doctrine prevents individuals or
8  other corporations from misusing the corporate laws by the device of a sham corporate entity
9  formed for the purpose of committing fraud or other misdeeds." *Id*.

10  To demonstrate that the alter ego doctrine applies, Dr. Nathoo "must make out a prima
11  facie case (1) that there is such unity of interest and ownership that the separate personalities [of
12  the two entities] no longer exist and (2) that failure to disregard [their separate entities] would
13  result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (internal
14  quotes and citation omitted); *see also Sonora Diamond*, 83 Cal.App.4th at 538 ("In California,
15  two conditions must be met before the alter ego doctrine will be invoked. First, there must be
16  such a unity of interest and ownership between the corporation and its equitable owner that the
17  separate personalities of the corporation and the shareholder do not in reality exist. Second,
18  there must be an inequitable result if the acts in question are treated as those of the corporation
19  alone.").

20  In *Sonora Diamond*, there was no evidence of any wrongdoing by either entity or of any
21  injustice flowing from the recognition of the company's separate corporate identity. The court
22  explained that "[t]he alter ego doctrine ... affords protection where some conduct amounting to
23  bad faith makes it inequitable for the corporate owner to hide behind the corporate form."
24  *Sonora Diamond*, 83 Cal.App.4th at 539. One company's financial advances to another did not
25  prove the requisite misconduct or injustice because there was no evidence that such advances
26  were made with a fraudulent or deceptive intent. Due to the absence of this "essential element,"
27  the court held that the alter ego doctrine could not be invoked. *Id*. at 539.
28

6

Similarly here, Dr. Nathoo has not introduced *any* evidence demonstrating any wrongdoing by either BriteSmile or CAP Advisors related to BriteSmile's corporate form or that any injustice would flow from recognizing BriteSmile's corporate identity separate from CAP Advisors. At most, Dr. Nathoo submits evidence demonstrating Anthony Pilaro's and CAP Advisors' made some efforts to control and manage BriteSmile and/or Visx, but not that such efforts were made with any fraudulent or deceptive intent. Accordingly, Dr. Nathoo may not invoke the alter ego doctrine to support exercising jurisdiction over CAP Advisors, and thus BriteSmile's conduct may not be imputed to CAP Advisors for purposes of establishing general jurisdiction.

**C.     Dr. Nathoo Has Not Made a Prima Facie Showing of Specific Jurisdiction.**

Dr. Nathoo also maintains that this Court can exercise specific jurisdiction over CAP Advisors. To evaluate the nature and quality of a defendant's contacts for the purposes of specific jurisdiction, courts use a three-part test: (1) some action must be taken whereby the defendant purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *see also Cubbage v. Merchent*, 744 F.2d 665, 668 (9th Cir. 1984). In order to establish purposeful availment, the defendant must have committed an intentional act which was both expressly aimed at and which caused harm in the forum state. *Panavision International v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).

Dr. Nathoo is suing CAP Advisors for breach of contract. (Dr. Nathoo's Amended Countercomplaint, ¶¶ 260-61.) Dr. Nathoo alleges that he agreed to purchase $200,000 worth of BriteSmile stock and that Dr. Nathoo gave Mr. Pilaro a note in the amount of $200,000 for the stock. (*Id*. at ¶ 169). This was an agreement that was allegedly between Dr. Nathoo, CAP Advisors and Mr. Pilaro and was memorialized in a letter dated June 14, 1999. (*Id*.) The June 14, 1999 letter from CAP Advisors to Dr. Nathoo states: "This will confirm that our nominee ... holds for the account of CAP Advisors Limited the following shares purchased by you as of

7

June 3, 1999 and pledged to us on that date: 18,264.84 shares of common stock, par value of $.001 per share of BriteSmile, Inc., a Utah Corporation." (*Id*. at Ex. P.) Dr. Nathoo further alleges that although he paid the $200,000 before the note became due, Mr. Pilaro failed to convey the stocks. (Dr. Nathoo's Amended Countercomplaint, ¶¶ 170-71.) As evidence of CAP Advisors' contacts in California related to the breach of contract claim, Dr. Nathoo also points to BriteSmile's 10KSB form filed on July 2, 1999, which indicates that CAP Advisors provided financing to BriteSmile's senior management, directors and key consultants to purchase BriteSmile stock. (Moyer Decl., Ex. D at 5.)

Dr. Nathoo has not met his burden to demonstrate that CAP Advisors' conduct related to Dr. Nathoo's purchase of BriteSmile stock constitutes intentional acts which were both expressly aimed at and which caused harm in California. Neither Dr. Nathoo nor CAP Advisors are California residents. Dr. Nathoo has not proffered any facts demonstrating he incurred any harm from the alleged agreement in California, nor that CAP Advisors performed any portion of the contract with Dr. Nathoo in this forum state. Therefore, Dr. Nathoo has not met his burden of demonstrating a prima facie case for specific jurisdiction. *See Panavision International*, 141 F.3d at 1321; *see also McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir.1988) (no specific jurisdiction based on contract executed in California but negotiated in England where plaintiff did not allege defendant performed any portion of contract in California).

Because Dr. Nathoo had not demonstrated it would be proper for this Court to exercise jurisdiction over CAP Advisors, either based on general or specific jurisdiction, the Court finds that it lacks jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court GRANTS CAP Advisors' motion to dismiss Dr. Nathoo's sixteen counterclaim against it.

**IT IS SO ORDERED.**

Dated: May 5, 2005         /s/ Jeffrey S. White
                           JEFFREY S. WHITE
                           UNITED STATES DISTRICT JUDGE

8

9