IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITESMILE, INC. and BRITESMILE DEVELOPMENT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>DISCUS DENTAL, INC.; SALIM NATHOO<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | No. C 02-03220 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART BRITESMILE AND COUNTER-DEFENDANTS' MOTION TO DISMISS DR. NATHOO'S COUNTERCLAIMS** |

Now before the Court is the motion of Plaintiffs BriteSmile, Inc. and BriteSmile Development, Inc. (collectively "BriteSmile") and Counter-Defendants R. Eric Montgomery, Oraceutical, LLC, John Reed, John Warner and Anthony Pilaro (collectively "Counter-Defendants") to dismiss Dr. Salim Nathoo's first, second, third, fourth, fifth, sixth, seventh and eleventh counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS IN PART and DENIES IN PART the motion to dismiss.

**FACTUAL BACKGROUND**

BritSmile and Counter-Defendants are moving to dismiss Dr. Nathoo's first through seventh counterclaims for correction of inventorship and eleventh counterclaim on the grounds, *inter alia*, that Dr. Nathoo's own allegations demonstrate he did not invent the technology

claimed in the patents at issue in these counterclaims because they all have the same written description as an earlier filed patent, U.S. Patent No. 5,922,307 (the "'307 Patent").[1]

On September 25, 1995, Montgomery filed a provisional patent application, U.S. Provisional Application No. 60/004,248, related to teeth whitening technology. (Dr. Nathoo's Amended Countercomplaint, Ex. D.) A year later, on September 25, 1996, Montgomery converted the provisional application to an ordinary utility patent application, U.S. Application No. 08/719,569 (the "'569 Application"). (*Id*.) The '569 Application issued on July 13, 1999 as the '307 Patent. (*Id*.)

Dr. Nathoo and Montgomery first met at a dental conference in or around 1996. At that conference, Montgomery told Dr. Nathoo he was interested in developing certain teeth whitening technology and pressed Dr. Nathoo to disclose teeth whitening technology he had developed. (Dr. Nathoo's Amended Countercomplaint, ¶ 111.) Montgomery later called Dr. Nathoo several times to press him to discuss teeth whitening technology, but Dr. Nathoo continued to refuse because of the proprietary nature of his technology. (*Id*. at ¶ 112.) In or around March of 1997, after Montgomery began suggesting that he and Dr. Nathoo form a business relationship, Dr. Nathoo made one or more confidential, inventive contributions on how to develop teeth whitening technology. (*Id*. at ¶¶ 113-14.) Dr. Nathoo disclosed additional confidential, inventive contributions to Montgomery in or around January 1998. (*Id*. at ¶¶ 115-16.) In or around February 1998, Dr. Nathoo and Montgomery and their companies, Oral Health Clinical Services, LLC ("OHCS") and Oraceutical, respectively, entered into a business relationship to develop teeth whitening technology. (*Id*. at ¶ 117.)

In or around 1998, Dr. Nathoo discovered that Montgomery had filed one or more patent applications claiming and disclosing Dr. Nathoo's inventions which he had disclosed to

---

[1] In his first counterclaim, Dr. Nathoo is suing to correct the inventorship of the '307 Patent, and in his second through seventh counterclaims he is suing to correct the inventorship on U.S. Patent No. 6,312,670 (the "'670 Patent"), U.S. Patent No. 6,331,292 (the "'292 Patent"), U.S. Patent No. 6,448,914 (the "'914 Patent"), U.S. Patent No. 6,514,543 (the "'543 Patent"), U.S. Patent No.6,322,773 (the "'773 Patent"), and the U.S. Patent No. 6,536,628 (the "'628 Patent"). The patents referenced in Dr. Nathoo's second through seventh counterclaims are collectively referred to as the "patents at issue" for purposes of this motion.

2

Montgomery in confidence. (*Id*. at ¶ 119.) After being confronted by Dr. Nathoo, Montgomery acknowledged Dr. Nathoo's inventorship of U.S. Patent No. 6,221,341 (the "'341 Patent"), as well as his inventorship of other patents. Despite Montgomery's further acknowledgment of his obligation to name Dr. Nathoo as an inventor on all such patents, he never did. (*Id*.)[2]

Dr. Nathoo considered and treated his confidential inventions as trade secrets. (*Id*. at ¶¶ 123-25.) When he disclosed such confidential, inventive contributions to Montgomery, there was an express and implied agreement that Montgomery would keep such inventive contributions confidential. They also had an express understanding that Dr. Nathoo would share in any economic benefit arising from use, commercial activity, and/or licensing of any technology utilizing or incorporating such inventions. (*Id*. at ¶¶ 124-25.)

In addition to the '341 Patent, Montgomery filed patent applications claiming Dr. Nathoo's inventions without naming Dr. Nathoo as an inventor on the '307 Patent and the patents at issue despite the fact that Dr. Nathoo made one or more inventive contributions to one or more claims of these patents. (*Id*. at ¶¶ 127, 132-139.) Dr. Nathoo alleges that he is the co-inventor of one or more claims of these patents, and thus, should have been named as a co-inventor. He seeks an order pursuant to 35 U.S.C. § 256 directing the Commissioner for Patents to correct the inventorship of these patents by adding Dr. Nathoo as a co-inventor. (*Id*. at ¶¶ 173-199.)

Each of the applications for the patents at issue claimed the benefit of the filing date of the '307 Patent and had written descriptions of the inventions disclosed that were identical to the written description in the '307 Patent. (*Id*. at Exs. E-J.) The patents issued on these applications have different claims, but the descriptions of the invention disclosed therein are identical to that of the '307 Patent. (*Id*.) Each of these patents were classified as a continuation or as divisional of a prior application; none were classified as "continuation-in-part." Continuations and divisionals are types of applications which either continue or divide a prior

---

[2] Dr. Nathoo's eighth counterclaim is for correction of inventorship of the '341 Patent, but BriteSmile and Counter-Defendants are not moving to dismiss this claim.

3

application, but utilize the same specification, *i.e.* description of the invention. 35 U.S.C. §§ 120, 121.

Dr. Nathoo's eleventh counterclaim is for constructive trust. He alleges that by failing to name him as an inventor on the patents described above, Montgomery, acting individually and on behalf of BriteSmile, wrongfully possessed and/or continues to possess, exclusive rights to the patents. (Dr. Nathoo's Amended Countercomplaint, ¶¶ 222-24.) Dr. Nathoo alleges Pilaro, Reed, and Warner are liable through aiding and abetting Montgomery's wrongful possession of sole inventorship rights, and that Oraceutical is the alter ego of Montgomery. (*Id.* at ¶¶ 225-26.)

## ANALYSIS

### I. Legal Standard

Rule 12(b)(6) motions challenge the legal sufficiency of the claims asserted in the complaint. A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under this liberal standard, motions to dismiss are viewed with disfavor, and are rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). The complaint is viewed in a light most favorable to the nonmoving party, and all factual allegations therein are taken as true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1989).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice or those attached to the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989); *Mullis v. U.S. Bankruptcy Court for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987). In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).

4

**II.    BriteSmile and Counter-Defendants' Motion**

**A.    Dr. Nathoo Fails to State Claims for Correction of Inventorship**

Dr. Nathoo's first through seventh counterclaims are to correct the inventorship on the patents at issue pursuant to 35 U.S.C. § 256 ("Section 256"), which provides:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

BriteSmile and Counter-Defendants argue that the '307 Patent and the patents at issue are each based on a description of the invention that was complete as of September 25, 1996, the description in the '307 Patent. Because Dr. Nathoo alleges that his earliest disclosure to Montgomery occurred in March 1997, *after* the application for the '307 Patent was filed, they contend Dr. Nathoo's own allegations demonstrate he has no ownership interest in the '307 Patent and the patents at issue.

A patent specification must contain an adequate written description. 35 U.S.C. § 112, ¶ 1; *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003). "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not; the applicant for a patent is therefore required to recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." *Amgen Inc. v. Hoechst Marion Roussel Inc.,* 314 F.3d 1313, 1330 (Fed. Cir. 2003) (internal quotations and citation omitted). Subsequently added claims may only obtain the priority date of the original patent if the written description of the original patent provides adequate support for and description of the new claims. *Moba*, 325 F.3d at 1319.

Dr. Nathoo does not dispute that he alleges his earliest disclosure to Montgomery occurred in March 1997, *after* the application for the '307 Patent was filed. Nor does Dr.

5

1 Nathoo dispute that the written description of the '307 Patent is identical to those in the patents
2 at issue. To avoid this problem, Dr. Nathoo argues that the claims of the patents at issue in his
3 counterclaims disclose new matters not described in the written descriptions, which, if true,
4 would invalidate these patents pursuant to Section 112, ¶ 1.[3] *See* 35 U.S.C. § 112, ¶ 1; *Moba,*
5 *B.V.*, 325 F.3d at 1319. Thus, Dr. Nathoo's claims for correction of inventorship necessitate a
6 finding that those patents are invalid. Unfortunately for Dr. Nathoo, this Court may not direct
7 the Patent Office to correct the inventorship of patents pursuant to Section 256 when doing so
8 would require the Court to declare the patents invalid. *Oregon Health & Science Univ. v. Vertex*
9 *Pharmaceuticals, Inc.*, 233 F.Supp.2d 1282, 1285 (D. Or. 2002) ("Congress has conferred no
10 jurisdiction on the federal courts to adjudicate a patent's validity in a Section 256 action to
11 correct inventorship."). Rather, Section 256 is a savings provision which cures a patent that
12 would otherwise be invalid based on its failure to name more than or omit at least one of the
13 true inventors. *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1350, 47 U.S.P.Q.2d 1657, 1662 (Fed.
14 Cir. 1998) (describing Section 256 as "a savings provision" and holding that if a party
15 "demonstrates that inventorship can be corrected as provided for in section 256, a district court
16 must order correction of the patent, thus saving it from being rendered invalid"); *see also*
17 *Oregon Health & Science Univ.*, 233 F. Supp. 2d at 1284.

18 In *Oregon Health & Science University*, a doctor moved pursuant to Section 256 to be
19 named as an inventor on a patent. The doctor communicated his invention after the patent
20 application was filed, but before the patent was issued. To name the doctor as an inventor on
21 the patent would have necessarily required the court to make a "finding that the defendant was
22 not in possession of the claimed subject matter at the time it filed the application or, in other
23 words, that the patent [was] invalid." *Id*. at 1285. It did not matter that the doctor was not
24 arguing that the patent should be declared invalid. The court could not decide to add the doctor

---

[3] Even if Dr. Nathoo's argument could save his counterclaims for the patents at issue, Dr. Nathoo does not provide any argument as to why his failure to allege any disclosures prior to 1997 is not fatal to his first counterclaim on the '307 Patent, the application for which was filed in 1996. Therefore, the Court grants BriteSmile and Counter-Defendants' motion as to Dr. Nathoo's first counterclaim for the additional, independent reason that Dr. Nathoo's own allegations demonstrate he cannot state a claim.

6

as an inventor without first making a preliminary finding that the patent was invalid. Because, as the court concluded, a party may not assert that a patent is invalid in an action to correct the named inventors under Section 256, the court granted judgment as a matter of law on the Section 256 claim. *Id.*

Similarly here, to name Dr. Nathoo as an inventor on the patents at issue would necessarily require the Court to make a finding that the patents are invalid. Thus, Dr. Nathoo may not bring claims to correct the inventorship of the patents at issue pursuant to Section 256. *Id.*[4] Accordingly, the Court dismisses Dr. Nathoo's first through seventh counterclaims with prejudice.[5]

**B.     Dr. Nathoo Sufficiently States a Claim for Constructive Trust**

To state a claim for constructive trust, Dr, Nathoo must allege: (1) the existence of a property or some interest in property; (2) his right to that property or property interest; and (3) some wrongful acquisition or detention of the property or property interest by another party who is not entitled to it. *Communist Party v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 990 (1995).

Dr. Nathoo alleges that, as a co-inventor of the patents at issue, he has a property interest in such patents and that BriteSmile and Counter-Defendants wrongfully acquired exclusive rights to the patents by excluding him as a co-inventor. BriteSmile and Couter-Defendants argue that Dr. Nathoo only alleges that he is a co-owner of the patents at issue, rather than the

---

[4] *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551 (Fed. Cir. 1997) and *Frank's Casing Crew & Rental Tools, Inc. v. PMR Technologies, Ltd.*, 292 F.3d 1363 (Fed. Cir. 2002) are not authority to the contrary. In both of these cases, unnamed inventors could bring claims to correct the inventorship of patents pursuant to Section 256 despite the fact that the patents might also be held unenforceable on other, independent grounds, such as the inequitable conduct of other inventors. *See Stark*, 119 F.3d at 1555; *Frank's Casing Crew & Rental Tools*, 292 F.3d at 1377. *Stark* and *Frank's Casing Crew & Rental Tools* do not address the situation before the Court, where correcting the inventorship of the patents at issue would require the Court to first conclude the patents are invalid. *See Oregon Health & Science Univ.*, 233 F. Supp. 2d at 1285 (distinguishing *Stark* because in *Stark* any claim of invalidity was irrelevant to the claim of inventorship).

[5] At the hearing, Dr. Nathoo submitted authority to argue that the patents at issue may be reissued if they are deemed invalid. However, whether the patents may be reissued is not currently before the Court. Nor is the question of whether Dr. Nathoo may, pursuant to some authority other than Section 256, pursue claims to be named as an inventor. The Court is merely holding that Dr. Nathoo may not bring claims pursuant to Section 256 to correct the inventorship on patents when doing so would require the Court to first find the patents invalid.

7

sole owner. Thus, according to BriteSmile and Counter-Defendants, because pursuant to the patent laws, each co-owner is entitled to fully exploit a jointly owned patent without accounting to the other owner, Dr. Nathoo fails to allege that BriteSmile and Counter-Defendants wrongfully possesses some property that belongs to him.

In support of their motion, BriteSmile and Counter-Defendants rely on 35 U.S.C. § 262. However this statute provides: "*In the absence of any agreement to the contrary*, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners." 35 U.S.C. § 262 (emphasis added). Dr. Nathoo alleges that he had an had an express understanding with Montgomery that Dr. Nathoo would share in any economic benefit arising from use, commercial activity, and/or licensing of any technology utilizing or incorporating Dr. Nathoo's inventive contributions. (Dr. Nathoo's Amended Countercomplaint, ¶¶ 124-25.) Thus, Dr. Nathoo appears to allege the existence of an agreement, pursuant to § 262, which requires BriteSmile and Counter-Defendants to account to him for their use and profit from the patents at issue.

BriteSmile and Counter-Defendants also argue that Dr. Nathoo cannot maintain a claim for constructive trust because he cannot establish inventorship. The Court merely held above that Section 256 is not a method by which Dr. Nathoo can have his name added as an inventor on the claims at issue. However, the Court did not decide, nor could it on a motion to dismiss based on the allegations in Dr. Nathoo's countercomplaint, that Dr. Nathoo cannot establish any ownership interest in these patents through some other means. Therefore, viewing the Counter-Complaint in the light most favorable to Dr. Nathoo, and taking all allegations as true, Dr. Nathoo thus sufficiently states a claim for constructive trust.

## CONCLUSION

For the foregoing reasons, the Court GRANTS BriteSmile and Counter-Defendants' motion to dismiss with respect to Dr. Nathoo's first through seventh counterclaims and DENIES

the motion with respect to Dr. Nathoo's eleventh counterclaim.  Dr. Nathoo's first through seventh counterclaims are dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: May 9, 2005                                        /s/ Jeffrey S. White
                                                          JEFFREY S. WHITE
                                                          UNITED STATES DISTRICT JUDGE